ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - -  x
                               :
UNITED STATES OF AMERICA       :    **SEALED**
                               :    **SUPERSEDING INDICTMENT**
        - v. -                 :
                               :    S2 16 Cr. 342 (SHS)
DAVID VILLANUEVA and           :
ALEX LICHTENSTEIN,             :
  a/k/a "Shaya,"               :
                               :
        Defendants.            :
                               :
- - - - - - - - - - - - - - -  x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: JUN 1 6 2016

**COUNT ONE**
**(Conspiracy to Commit Bribery)**

The Grand Jury charges:

**Background**

**Gun License Application Process**

1.    At all times relevant to this Indictment, the New York
City Police Department ("NYPD") Licensing Division, located at One
Police Plaza in Manhattan, is the entity within the NYPD responsible
for approving or rejecting all applications ("Applications") for
handgun licenses in New York City.

2.    Among the types of handgun licenses issued by the NYPD
Licensing Division are (i) a premises license, which permits its
holder to have a handgun in the holder's home (a "Premises License");
(ii) a limited carry license, which permits its holder to have a
handgun in the home or business and to carry the handgun for specified,
limited purposes and at limited times (a "Limited Carry License");

and (iii) a full carry license, which permits its holder to carry a handgun anywhere in New York State at all times, but only for justified business purposes (a "Full Carry License").

3.    The NYPD Licensing Division receives approximately 5,000 Applications for gun licenses a year.    Limited and Full Carry Licenses are a small fraction of the licenses issued by the NYPD Licensing Division annually.

4.    NYPD policies provide that after an Application is received, the NYPD Licensing Division must conduct an investigation of the applicant before electing to approve or reject the Application. Pursuant to NYPD policies, an investigation is to include (i) a review of the applicant's criminal history, including summonses, arrests, and convictions; (ii) a review of the applicant's mental health history; (iii) a verification of the details of the application; (iv) an in-person interview of the applicant; and (v) an investigation into the business need for Limited and Full Carry Licenses.

5.    Certain findings, such as a prior felony conviction, result in the automatic rejection of an applicant.

6.    Under New York State Law, the NYPD Licensing Division has discretion to reject gun license Applications for additional reasons, such as moral character, mental health issues, or substance abuse issues.    On its website, the NYPD Licensing Division indicates that it may reject Applications if the investigation reveals a history

2

of arrest, driving infractions, or domestic violence incidents, among other reasons.

7.    Typically, the processing, investigation, and approval or rejection of an Application takes several months.  For Limited and Full Carry Licenses, it can take even longer.

## Licensing Division Officers

8.    DAVID VILLANUEVA, the defendant, was an NYPD Sergeant assigned to the NYPD Licensing Division for more than a decade. VILLANUEVA had the authority to approve Applications for gun licenses. In addition, VILLANUEVA was responsible for investigating existing gun license holders who were arrested, given summonses, or otherwise interacted with law enforcement to determine whether their licenses should be revoked or suspended pending further investigation.

9.    "CW-1" is a co-conspirator not named herein.  CW-1 was assigned to the Licensing Division from in or about 2009 to in or about 2016, and was responsible for, among other things, investigating Applications.  At all relevant times to this Indictment, CW-1 reported to DAVID VILLANUEVA, the defendant.  CW-1 has pleaded guilty to committing bribery and conspiracy to commit bribery connected to the scheme described herein and is cooperating with law enforcement in the hope of obtaining a more lenient sentence.

## The "Expediter"

10. ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, is a so-called "expediter" who charged clients a fee, typically thousands of dollars, to expedite a client's application for a gun license. As explained below, LICHTENSTEIN provided financial and other benefits to NYPD Officials, including DAVID VILLANUEVA, the defendant, and CW-1, in exchange for expediting and approving gun permit applications for LICHTENSTEIN's clients.

## The Bribery Scheme

11. At all times relevant to this Indictment, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, held himself out as an expediter who could, for a large fee, obtain gun licenses for persons seeking gun licenses from the Licensing Division.

12. ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, charged his clients as much as $18,000 per gun license.

13. ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, was able to obtain gun licenses from the NYPD Licensing Division on an accelerated basis for his clients and was also able to obtain gun licenses for clients who were otherwise unlikely to obtain gun licenses because of their criminal or personal history. LICHTENSTEIN was able to provide these "expediting" services by bribing officers of the Licensing Division -- namely DAVID VILLANUEVA, the defendant, and CW-1.

4

14.   ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, paid thousands of dollars in bribes to DAVID VILLANUEVA, the defendant, in exchange for VILLANUEVA's agreement to expedite gun license applications for LICHTENSTEIN's clients.  CW-1 assisted VILLANUEVA by conducting first level reviews of and approving these applications, and received a small portion of LICHTENSTEIN's bribe money from VILLANUEVA.  In addition to these cash bribes, LICHTENSTEIN provided other benefits to VILLANUEVA and CW-1, including, for example, bottles of liquor; limousine rides for VILLANUEVA; and a limousine tour of wineries for VILLANUEVA, CW-1, another officer of the Licensing Division, and their significant others.

15.   As a part and in furtherance of the bribery scheme, and in exchange for the financial and other benefits set forth above, the clients of ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, were typically processed in the following manner:

a.   LICHTENSTEIN alerted DAVID VILLANUEVA, the defendant, that one or more clients was coming to the Licensing Division to apply for a gun license.

b.   VILLANUEVA then alerted CW-1 that a LICHTENSTEIN client was coming to apply for a gun license. VILLANUEVA typically assigned CW-1 the task of conducting the first

level investigation and review of Applications submitted by clients
of LICHTENSTEIN.

   c. When a client of LICHTENSTEIN came to the
Licensing Division, often accompanied by LICHTENSTEIN, either
VILLANEUVA or CW-1 processed the client's application in a
perfunctory fashion without conducting or completing the required
due diligence, in that they failed to (i) a complete review of the
applicant's criminal history; (ii) verify the details of the
application; (iii) conduct an in-person interview of the applicant;
and/or (iv) investigate the business need for Limited and Full Carry
Licenses.  On some occasions, these protocols were followed, but
only after the client was approved for a license.

   d. Soon after the Application of a LICHTENSTEIN
client was submitted to the Licensing Division, VILLANUEVA typically
told CW-1 to "close out" the file, meaning to enter CW-1's approval
of the Application in the Licensing Division computer system (the
"Computer System").  After CW-1 did so, VILLANUEVA entered his
approval in the Computer System, and a gun license would be issued
for the client without further review. Entry of the approval of the
first-level investigator, such as CW-1, and of a supervising officer,
such as VILLANUEVA, in the Computer System was necessary before a
gun license would be issued.

16.    In addition to expediting and approving Applications of clients of ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, DAVID VILLANUEVA, the defendant, and CW-1 also at times upgraded the gun licenses of LICHTENSTEIN's clients.  For example, VILLANUEVA and CW-1 at times upgraded such clients' gun licenses from Premises Carry to Limited Carry and from Limited Carry to Full Carry, without conducting further required investigation for such upgrades.

17.    As part of the bribery scheme, not only were gun licenses for the clients of ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, approved or upgraded without the necessary protocols being followed or the necessary due diligence being conducted, but gun licenses were approved for LICHTENSTEIN clients who, because of their criminal or personal history, would likely have been rejected as a matter of discretion by the Licensing Division.  For example, in or about February 2015, DAVID VILLANUEVA, the defendant, approved the Limited Carry gun license for a LICHTENSTEIN client ("Client-1"). Client-1's Limited Carry gun license was approved even though Client-1 had been previously arrested for bribing a public official and for assault.

18.    As a result of the bribes that were given by ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, to and accepted by, DAVID VILLANUEVA, the defendant, VILLANUEVA expedited, approved, and caused

to be approved at least approximately 100 to 150 Applications submitted by LICHTENSTEIN for his clients.

## **LICHTENSTEIN's Bribe Offer to an NYPD Officer in April 2016**

19.     In or about the early months of 2016, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, was banned by a commanding officer of the Licensing Division from obtaining assistance for his clients.  As a result, in or about April 2016, in an attempt to establish an additional relationship within the NYPD to facilitate the expediting and approval of gun licenses for his clients, in exchange for bribes, LICHTENSTEIN approached and offered a bribe to an NYPD officer not assigned to the Licensing Division ("Officer-1").

20.     Although Officer-1 did not work in or with the License Division, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, indicated that he was soliciting Officer-1, as an NYPD officer with whom LICHTENSTEIN was familiar, for assistance.

21.     Officer-1 did not agree to help ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, and instead, after LICHTENSTEIN's approach and bribe offer to Officer-1, reported LICHTENSTEIN to the Internal Affairs Bureau ("IAB") of the NYPD, which is the unit of the NYPD that investigates police misconduct.

22.     On or about April 13, 2016, Officer-1, acting at the direction of the Federal Bureau of Investigation (the "FBI") and IAB, met with ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, in Borough

Park, Brooklyn. Officer-1 was equipped with video- and audio-recording devices for the duration of the meeting, and the following occurred, among other things, during the meeting:

a. At the beginning of the meeting, LICHTENSTEIN patted down Officer-1 in an attempt to detect whether Officer-1 was wearing a wire. Officer-1 stated that "you don't have to pat me down." LICHTENSTEIN responded that he would rather meet Officer-1 "in your underpants and your undershirt," which Officer-1 understood to mean that LICHTENSTEIN wanted to be sure that Officer-1 was not recording the meeting.

b. As part of his effort to assist IAB and the FBI, Officer-1 told LICHTENSTEIN, in sum and in substance, that he was nervous about helping LICHTENSTEIN obtain gun licenses but could use the money, and that he (Officer-1) could not secure gun licenses on his own since he was not in the NYPD License Division, but that he knew a union delegate who was in the License Division and would be willing to help him.

c. Officer-1 also asked LICHTENSTEIN how much money Officer-1 could make if Officer-1 obtained gun licenses for LICHTENSTEIN's customers, and LICHTENSTEIN responded: "I'll give you and [the union delegate] more than you'll make in the police department." LICHTENSTEIN offered Officer-1 $6,000 per gun license that Officer-1 helped him obtain.

9

d. LICHTENSTEIN further told Officer-1: "I got so many license[s] in last year," and estimated that he had obtained 150 gun licenses through his connections in the NYPD License Division. LICHTENSTEIN then took out his calculator and multiplied 150 by $6,000, to demonstrate to Officer-1 how much money ($900,000) Officer-1 could make.

### Statutory Allegations

23. From in or about 2013, up to and including in or about 2016, in the Southern District of New York and elsewhere, DAVID VILLANUEVA and ALEX LICHTENSTEIN, a/k/a "Shaya," the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to commit bribery, in violation of Title 18, United States Code, Section 666.

24. It was a part and an object of the conspiracy that DAVID VILLANUEVA, the defendant, being an agent of a State and local government, and an agency thereof, to wit, an NYPD officer in the Licensing Division of the NYPD, willfully, knowingly, and corruptly would and did solicit, demand for the benefit of any person, accept, and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the NYPD involving a thing of value of $5,000 or more, such government and agency having received, in

10

a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B).

25.   It was also a part and an object of the conspiracy that ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, and others known and unknown, willfully, knowingly, and corruptly would and did give, offer, and agree to give a thing of value to a person, with intent to influence and reward agents of a State and local government, and an agency thereof, to wit, officers of the NYPD, such government and agency having received, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in connection with business, transactions, and series of transactions of the NYPD involving a thing of value of $5,000 and more, in violation of Title 18, United States Code, Section 666(a)(2).

Overt Act

26.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt act, among others, was committed in the Southern District of New York:

a.   In or about February 2015, ALEX LICHTENSTEIN, the defendant, facilitated the application for a gun license of

Client-1, after which DAVID VILLANUEVA, the defendant, approved the gun license application of Client-1 at NYPD Police Headquarters, in New York, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Bribery)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1 to 22 of this Superseding Indictment are repeated and realleged as if fully set forth herein.

28.   From in or about 2013, up through and including in or about 2016, in the Southern District of New York and elsewhere, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, willfully, knowingly, and corruptly did give, offer, and agree to give a thing of value to a person, with intent to influence and reward agents of a State and local government, and an agency thereof, to wit, officers of the NYPD, such government and agency having received, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in connection with business, transactions, and series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, LICHTENSTEIN offered and paid bribes to officers of the NYPD, including DAVID VILLANUEVA, the defendant, in order to obtain gun licenses from the NYPD's Licensing

12

Division for individuals who had paid LICHTENSTEIN thousands of dollars for his assistance in obtaining such gun licenses.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT THREE
### (Bribery)

The Grand Jury further charges:

29.    The allegations contained in paragraphs 1 to 22 of this Superseding Indictment are repeated and realleged as if fully set forth herein.

30.    From in or about 2013, up through and including in or about 2016, in the Southern District of New York and elsewhere, DAVID VILLANUEVA, the defendant, being an agent of a State and local government, and an agency thereof, to wit, an NYPD officer in the Licensing Division of the NYPD, willfully, knowingly, and corruptly did solicit, demand for the benefit of any person, accept, and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the NYPD involving a thing of value of $5,000 and more, such government and agency having received, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, to wit, VILLANUEVA accepted cash and benefits from ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, in exchange for expediting and approving gun licenses

13

issued by the Licensing Division of the NYPD, as such opportunities arose.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT FOUR
### (Bribe Offer)

The Grand Jury further charges:

31.   The allegations contained in paragraphs 1 to 22 of this Superseding Indictment are repeated and realleged as if fully set forth herein.

32.   In or about April 2016, in the Southern District of New York and elsewhere, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, willfully, knowingly, and corruptly did offer to give a thing of value to a person, with intent to influence agents of a State and local government, and an agency thereof, to wit, Officer-1, an officer of the NYPD who was not assigned to the Licensing Division of the NYPD, such government and agency having received, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, in connection with business, transactions, and series of transactions of the NYPD involving a thing of value of $5,000 and more, to wit, LICHTENSTEIN offered a bribe of $6,000 for every gun license Officer-1 could cause to be expedited or approved by the NYPD's Licensing Division for individuals who had paid LICHTENSTEIN.

14

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## FORFEITURE ALLEGATIONS

33.   As a result of committing one or more of the offenses alleged in Counts One and Three of this Superseding Indictment, DAVID VILLANUEVA, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts One and Three of this Superseding Indictment.

34.   As a result of committing one or more of the offenses alleged in Counts One, Two and Four of this Superseding Indictment, ALEX LICHTENSTEIN, a/k/a "Shaya," the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts One, Two and Four of this Superseding Indictment.

## Substitute Asset Provision

35.   If any of the above-described forfeitable property, as a result of any act or omission of DAVID VILLANUEVA and ALEX LICHTENSTEIN, a/k/a "Shaya," the defendants:

(1) cannot be located upon the exercise of due diligence;

15

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853, and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

16

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

DAVID VILLANUEVA, and
ALEX LICHTENSTEIN,
a/k/a "Shaya,"

Defendants.

SEALED SUPERSEDING INDICTMENT

S2 16 Cr. 342 (SHS)

(Title 18, United States Code, Sections
666, 371 and 2.)

PREET BHARARA
United States Attorney.

*[handwritten signature]*

*[handwritten: Deputy Foreperson]*

*[handwritten: 6/16/16  Pld Sealed Int A/w ordered  Mag Judge Moses]*